**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| MARISSA S. PIPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:26-cv-00160-TWP-KMB |
| | ) | |
| STATE OF INDIANA, | ) | |
| INDIANA DEPARTMENT OF CHILD | ) | |
| SERVICES, | ) | |
| CLARISSA HALLETT DCS Caseworker | ) | |
| (individually and in official capacity), | ) | |
| KIMBERLY BYRUM DCS Caseworker | ) | |
| Supervisor (individually and in official capacity), | ) | |
| STEVEN OWENS Judge (individually and in | ) | |
| official capacity), | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY SCREENING COMPLAINT, ORDER DENYING MOTION FOR**
**PRELIMINARY INJUNCTION AND TRO, AND ORDER TO SHOW CAUSE**

On June 20, 2026, *pro se* Plaintiff Marissa S. Piper ("Piper") initiated this action. The same day, Piper filed a Motion for Preliminary Injunction and Temporary Restraining Order ("Motion for Preliminary Injunction and TRO") (Dkt. 3) and motion to proceed *in forma pauperis* (Dkt. 2). In the Entry of June 30, 2026, the Court denied Piper's request to proceed *in forma pauperis* (Dkt. 8). The Court stated, "[o]nce the filing fee is paid, the Court will screen the Complaint and rule on the pending motions." *Id.* at 2. On July 7, 2026, Piper paid the filing fee for bringing this action (Dkt. 10).

This action is now before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and for a ruling on Piper's Motion for Preliminary Injunction and TRO. For the reasons explained below, this action is subject to **dismissal for lack of jurisdiction**, and Piper's Motion for Preliminary Injunction and TRO is **denied**.

## I.   DISCUSSION

### A.   Screening of the Complaint

#### 1.  Screening Standard

The Seventh Circuit has explained,

> [D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status. 28 U.S.C. § 1915(e)(2)(B); *McGore*, 114 F.3d at 608. The district court may screen the complaint prior to service on the defendants, and must dismiss the complaint if it fails to state a claim. 28 U.S.C. § 1915(e)(2)(B).

*Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999).

District courts have an obligation under 28 U.S.C. § 1915(e)(2)(B) to screen complaints before service on the defendant and must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal under federal pleading standards,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphases in original).

## 2. **Piper's Complaint**

This case arises from the termination of Piper's parental rights and subsequent adoption of Piper's minor daughter. Piper brings this action against the State of Indiana, the Indiana Department of Child Services ("IDCS"), IDCS case workers Kimberly Byrum ("Byrum") and Clarissa Hallett ("Hallett"), IDCS attorney Marilyn Tucker Fullen ("Attorney Fullen"),[1] and Orange Circuit Court Judge Steven Owen ("Judge Owen").

According to Piper's Complaint, Byrum was the one who initially removed Piper's daughter from her custody (Dkt. 1 at 3). Piper's case was then assigned to Hallett, with Byrum supervising. Piper alleges that during the course of the underlying state court child custody proceedings, Byrum told Piper that if she continued to discuss her case with her advocate, then IDCS would terminate her parental rights; and Hallett stated that if Piper and her daughter discussed the case, then Piper's visitations would end. *Id.* at 3, 7. Piper further alleges that in her case and other child custody cases, Byrum's name would "disappear[]" from official case documents after the initial removals as part of a "systematic practice of conducting removals while concealing the decision-maker's identity from families, insulating unconstitutional removals from legal challenge." *Id.* at 3–4.

With respect to the underlying Orange County state court proceedings, Piper alleges that the summons and notice of those proceedings were sent to an old address, and as a result, Piper had no knowledge of the proceedings until after her parental rights had been terminated. *Id.* at 4. Piper also alleges that the presiding state court judge, Judge Owen, is not impartial. Piper specifically alleges that Judge Owen, IDCS employees, and county prosecutors, are all paid by the State of Indiana; and that Judge Owen "continuously and publicly advocated for CASA (Court

---

[1] Piper does not name Attorney Fullen in the caption of her Complaint but identifies Attorney Fullen as a defendant later in the Complaint (Dkt. 1 at 12).

3

Appointed Special Advocate) . . . on a local Orange County radio station," which creates "actual and apparent bias requiring disqualification." *Id.*

Piper next contests Judge Owen's order dated June 8, 2026, which denied Piper's motion to vacate the termination of her parental rights, among other things. *Id.* at 5. Piper alleges that the order was the result of "coordinated obstruction" of her rights. In support of this theory, Piper alleges that the order was issued after Judge Owen, Attorney Fullen, and a Travelers' Insurance adjuster all returned from having taken time off. *Id.* at 5–6.

The Complaint also contains allegations regarding various events during/around the state court child custody proceedings, including that; Piper was pressured into signing a safety plan; an IDCS case worker falsely told Piper that she could not give temporary guardianship of her daughter to her father (the child's maternal grandfather), which was never corrected or investigated by the case worker's manager; IDCS refused to tell Piper who her daughter had been temporarily placed with, and then ended Piper's phone contact with her daughter without a court order; IDCS permitted an unidentified guardian to take Piper's daughter out of the state without Piper's permission; IDCS permitted the unidentified guardian to attempt to baptize Piper's daughter without Piper's permission; IDCS authorized the administration of antidepressants to Piper's daughter without Piper's knowledge or consent; IDCS abruptly ended Piper's visitations and then obtained a protective order against Piper; IDCS denied the maternal grandfather's adoption application for the pretextual reason that he refused to cut all contact with Piper; IDCS falsely told the daughter's adoptive family that they would lose custody if they had contact with Piper; and the Orange Circuit Court repeatedly ignored or denied Piper's motions. *Id.* at 5–10.

Piper brings a variety of claims against the Defendants for violations of her constitutional rights under 42 U.S.C. § 1983 ("Section 1983"), a civil conspiracy claim under 42 U.S.C. § 1985

("Section 1985"), and a "conflict of interest" claim against Attorney Fullen. *Id.* at 10–12. Piper seeks monetary damages as well as several types of injunctive and declaratory relief, including an order vacating Judge Owen's order terminating Piper's parental rights. *Id.* at 13.

### 3.  Dismissal of the Complaint

Federal courts are courts of limited jurisdiction, not general jurisdiction, and "[n]o court may decide a case without subject-matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction. If the parties neglect the subject, a court must raise jurisdictional questions itself." *United States v. County of Cook*, 167 F.3d 381, 387 (7th Cir. 1999); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). A court "must raise the issue *sua sponte* when it appears that subject matter jurisdiction is lacking." *Buethe v. Britt Airlines*, 749 F.2d 1235, 1238 (7th Cir. 1984); *see also Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("federal courts are obligated to inquire into the existence of jurisdiction *sua sponte*"). "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514, *quoted in Miller v. Herman*, 600 F.3d 726, 730 (7th Cir. 2010); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citations and quotation marks omitted). Although "detailed factual allegations" are not required, mere "labels,"

"conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support").

Based on the Complaint, this Court does not have jurisdiction to adjudicate Piper's claims. To start, the State of Indiana, IDCS, IDCS caseworkers Byrum and Hallett, and IDCS Attorney Fullen are protected by sovereign immunity under the Eleventh Amendment of the United States Constitution. The Eleventh Amendment bars "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Piper's claims against the State of Indiana are therefore barred by sovereign immunity. And because immunity from suit "extends to state agencies and state officials in their official capacities," *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546 (7th Cir. 2019), and Piper is suing a state agency (IDCS) and IDCS employees Byrum, Hallett, and Attorney Fullen in their official capacities, Piper is barred from seeking recovery from them.

Judge Owen is further entitled to judicial immunity. *See Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006). Judges are entitled to absolute immunity where, as here, the challenged actions are "judicial in nature." *Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016); *see Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.").

And even though Piper names Byrum, Hallett, Attorney Fullen, and Judge Owen in their individual capacities as well, her claims remain barred. Individuals being sued in their individual capacity are protected by sovereign immunity when the claim against them is not a "bona fide individual capacity suit" and instead seeks relief that would "expend itself on the public treasury."

6

*Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003); *Luder v. Endicott*, 253 F.3d 1020, 1022–23 (7th Cir. 2001). The applicability of the Eleventh Amendment "is to be determined not by the mere names of the . . . parties but by the essential nature and effect of the proceeding, as it appears from the entire record." *In re New York*, 256 U.S. 490, 500 (1921). The Complaint alleges misconduct by Byrum, Hallett, Attorney Fullen, and Judge Owen solely in their roles as State employees. And based on the type of relief requested, it is clear that Piper is seeking relief from the State of Indiana, not any individual Defendant. Piper has not alleged any bona fide claims against Byrum, Hallett, Attorney Fullen, and Judge Owen in their individual capacities, so they are entitled to sovereign immunity.

Piper's claim under Section 1985 is also subject to dismissal for the additional reason that it alleges a conspiracy between the State of Indiana and its own employees. The Seventh Circuit Court of Appeals has held that when "[a]ll of the defendants in this suit . . . are public employees (plus their employer), . . . a conspiracy claim has no role to play." *Scott v. City of Chicago*, 619 F. App'x 548, 548 (7th Cir. 2015); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("Turley's conspiracy claim [under Section 1985] is superfluous in light of the fact that all named defendants are state actors.").

Piper's claim against Attorney Fullen for "conflict of interest" must also be dismissed. Piper cites no Indiana law creating a civil cause of action for "conflict of interest," so this claim is subject to dismissal for failure to state a claim upon which relief may be granted.

Moreover, to the extent Piper might have a viable claim against any Defendant, this Court must not exercise jurisdiction over that claim. To the extent the underlying child custody proceedings have concluded, a judicial rule referred to as the *Rooker-Feldman* doctrine bars federal district courts from reviewing or overturning the state court's decisions. *Scully v. Goldenson*, 751

F. App'x 905, 908 (7th Cir. 2018); *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) ("[T]he *Rooker-Feldman* doctrine bars federal jurisdiction when the federal plaintiff alleges that her injury was caused by a state court judgment . . . no matter how erroneous or unconstitutional the state court judgment may be."). The Court is therefore barred from granting any of Piper's requests for relief from Judge Owen's judgments or orders.

Assuming that the proceedings are still ongoing, the Court must abstain from exercising jurisdiction over this action. Generally, "when a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its *duty* to take such jurisdiction." *J.B. v. Woodard*, 997 F.3d 714, 721 (7th Cir. 2021) (citation modified) (emphasis in original). "Under established abstention doctrines, however, a federal court may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts and their ability to resolve the cases before them." *SKS & Assocs. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010).

There are several abstention doctrines that apply to this case. The first is the *Younger* abstention doctrine, named after the United States Supreme Court decision *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." *J.B.*, 997 F.3d at 722. The *Younger* doctrine applies to criminal proceedings as well as civil proceedings that implicate important state interests, including child-welfare proceedings. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018), *cert. denied*, 140 S. Ct. 384 (Mem.) (2019); *Ashley W. v. Holcomb*, 34 F.4th 588, 591 (7th Cir. 2022) ("We know . . . that *Younger* applies to state-initiated child-welfare litigation."). Granting Piper's requested relief would undoubtedly interfere with ongoing child custody and/or welfare proceedings, and nothing in the record in this case

indicates that Piper lacks an adequate opportunity to raise her constitutional claims in the state court proceedings. The *Younger* doctrine bars federal jurisdiction over this action.

The domestic-relations exception to federal jurisdiction likely also applies. "This exception covers a narrow range of issues 'involving the granting of divorce, decrees of alimony, and child custody orders.'" *J.B.*, 997 F.3d at 723 (quoting *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018)) (internal quotation marks and citations omitted). The Complaint requests an order directing the return of Piper's daughter to her custody and prohibiting interference with her parental rights. Whether Piper's daughter should or must be returned to her custody is a "difficult question[] of state law bearing on policy problems of substantial public import," so the domestic-relations exception advises against exercising federal jurisdiction. *Ankenbrandt v. Richards*, 504 U.S. 689, 701 (1992).

Even if no specific abstention doctrine were a "perfect fit," however, the Court must abstain from exercising jurisdiction based on the "general principals of federalism that underlie all of the abstention doctrines." *Courthouse News Serv.*, 908 F.3d at 1071; *see J.B.*, 997 F.3d at 723 ("[G]ranting declaratory or injunctive relief would provide [the plaintiff] with an offensive tool to take to state court to challenge that judge's orders. In these circumstances, federal courts need to stay on the sidelines."). "The adjudication of [Piper's claims] threaten interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government—to such a degree as to all but compel the federal judiciary to stand down." *J.B.*, 997 F.3d at 723.

Having concluded that abstention is appropriate, if not required, the only remaining question is whether the Court should abstain by staying this action or by dismissing it. "Generally—at least in the context of the *Younger* abstention doctrine—staying the case, rather

9

than an all-out dismissal of a claim, is the proper disposition where a plaintiff seeks compensatory damages. This is because the plaintiff cannot obtain money damages as part of the ongoing state court action." *Id.* at 724–25. Although Piper seeks an unspecified amount of money damages, a stay is not appropriate. As explained above, the Defendants are immune from Piper's damages claims. Additionally, there is no reason to conclude that Piper could not raise her constitutional claims in the underlying state court actions. *Courthouse News Serv.*, 908 F.3d 1071 ("Unless and until the state courts have proven unwilling to address an alleged . . . violation . . . the federal courts should not exercise jurisdiction over the matter.").

Additionally, due to the unknown length of the child custody proceedings, a stay may result in this case remaining on the Court's docket for several years. It would be a strain on limited judicial resources to allow this case to sit on the Court's docket indefinitely. Abstention via **dismissal** is therefore proper.

**B.    Motion for Preliminary Injunction and TRO (Dkt. 3)**

The Court now turns to Piper's Motion for Preliminary Injunction and TRO (Dkt. 3). Rule 65 of the Federal Rules of Civil Procedure authorizes district courts to issue two forms of temporary injunctive relief: preliminary injunctions and temporary restraining orders. Courts generally apply the same equitable standards to a motion for a temporary restraining order as they do to a motion for a preliminary injunction. *See Int'l Profit Assocs., Inc. v. Paisola*, 461 F. Supp. 2d 672, 675 (N.D. Ill. 2006) (collecting cases). In her Motion, Piper requests an order directing the immediate return of her daughter to her custody and enjoining further interference with her custody pending resolution of this lawsuit (Dkt. 3 at 1). Given the substance of the relief sought, the Motion is understood to be a motion for preliminary injunction. This is because "[a] temporary restraining order may not exceed 14 days without good cause." *Decker v. Lammer*, No. 21-1328, 2022 WL 135429, at *2 (7th Cir. Jan. 14, 2022) (citing Fed. R. Civ. P. 65(b)(2)).

10

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [she] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [she] has some likelihood of prevailing on the merits of [her] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490. 501 (7th Cir. 2020) (cleaned up).

Piper fails to satisfy at least the third requirement—a likelihood of success on the merits. For the reasons explained above, all of Piper's claims are subject to dismissal. Piper therefore has no likelihood of success on any claim that might entitle her to the injunctive relief she seeks. Her Motion for Preliminary Injunction and TRO is therefore **denied**.

C.     **Opportunity to Show Cause**

Piper shall have through **August 10, 2026**, by which to show cause why judgment consistent with this Entry should not issue. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013) ("Without at least an opportunity to amend or to respond to an order to show cause, an [] applicant's case could be tossed out of court without giving the applicant any timely notice or opportunity to be heard to clarify, contest, or simply request leave to amend.").

If Piper elects to file an amended complaint, she should conform to the following guidelines: (a) the amended complaint shall comply with the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendants with

11

"fair notice" of the claim and its basis; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555; quoting Fed. R. Civ. P. 8(a)(2)); (b) the amended complaint must include a demand for the relief sought; (c) the amended complaint must identify what legal injury Piper claims to have suffered and what persons are responsible for each such legal injury; and (d) the amended complaint must include the case number referenced in the caption of this Entry. The amended complaint also should demonstrate that jurisdiction is proper in this Court.

## II.    CONCLUSION

For the reasons stated above, having screened the Complaint, the Court finds it is subject to **dismissal for lack of jurisdiction**, and Piper's Motion for Preliminary Injunction and TRO (Dkt. 3) is **DENIED**. Piper is granted leave to file an amended complaint by no later than **August 10, 2026**. If an amended complaint is filed, it will be screened by the Court. If no amended complaint is filed by that date, then this action will be dismissed for the reasons set forth above.

Piper is also **reminded** that pursuant to the Court's June 30, 2026 Order, she must file substitute versions of Dkts. [1], [2], and [3] with confidential information redacted by no later than **July 27, 2026**, or the sealed restriction on those documents will be removed.

The **Clerk is directed** to add Marilyn Tucker Fullen as a Defendant in this action.

**SO ORDERED**.

Date:    7/10/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

MARISSA S. PIPER
1128 N. State Road 37
Paoli, IN 47454